Ryan Farnsworth ID # 8885
Avery Law
770 S. Woodruff Ave
Idaho Falls, ID 83401
Tel: 208-524-3020
Fax: 208-524-2051
Email: ryan@averylaw.net

*Attorneys for Plaintiff*
*Shara Lynn Bailey*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHARA LYNN BAILEY, <br><br> Plaintiff, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br><br> Defendant. | Case No.: 1:21-cv-00465 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> 1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Shara Lynn Bailey ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant").

### I.  INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's "consumer reports" as defined in 15 U.S.C. § 1681a(d), and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and

1

consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the Fair Credit Reporting Act, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the District of Idaho is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.     PARTIES

4.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in Meridian, Idaho.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.      Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 USC § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.      During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Idaho and conducted business in the State of Idaho on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant were not in good faith, was knowing, negligent, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

### IV.  FACTUAL BACKGROUND

12. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to

privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17. Defendant regularly purchases and obtains consumer bankruptcy information to include in consumer reports.

18. Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

20. Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

21. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22. Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

23. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

26. The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

27. FICO Scores are calculated using information contained in Defendant's consumer reports.

28. FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

29. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

   b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

30. Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

31. DTI compares the total amount a consumer owes to the total amount a consumer earns.

32. Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

33. A consumer's income, however, is not included in their consumer report; only their "amount of debt" is.

34. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest rates and lower credit limits).

35. A consumer who has obtained a bankruptcy discharge and has an account that is inaccurately reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

36. Defendant is aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

37. However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

38. Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

39. Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged), can be easily retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

40. Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

41. Despite the availability of accurate consumer information, Defendant regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

42. Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

43. Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on information they know is incomplete or inaccurate.

44. After a bankruptcy is discharged, Defendant also routinely relies on furnisher data, even though the furnisher has ceased updating an account upon the filing of a bankruptcy.

45. Consequently, Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, or sourced through Defendant's independent and voluntary efforts.

46. Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

47. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendant's own files.

48. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

49. Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Defendant is on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

50. Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about March 13, 2020, in the United States Bankruptcy Court for the District of Idaho (Case No. 20-00258).

51. Plaintiff received an Order of Discharge on or about June 22, 2020.

52. Thereafter, Plaintiff was not personally liable for any of their dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

53. Upon information and belief, Defendant Experian prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

54. Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

55. In the Public Records section of Plaintiff's consumer report, Defendant Experian included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

56. Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account

(i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

57. Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

58. Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

59. Defendant failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

60. Defendant inaccurately reported Plaintiff's Alpine Credit Union Account (the "Alpine Account"), starting with 5117 and opened in May 2017, which predated Plaintiff's bankruptcy filing.

61. The Account was discharged in Plaintiff's bankruptcy on or about June 22, 2020. Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

62. However, Experian inaccurately reported the discharged Account as open with a recent balance of $12,336.00 instead of a zero-dollar balance.

63. Defendant had ceased reporting or updating the Account with any new information after the filing of Plaintiff's Chapter 7 bankruptcy up until August of 2021, when Experian finally began reporting the Alpine Account as included in bankruptcy.

64. Prior to August 2021, Experian did not indicate that the Account was discharged in bankruptcy or report the Account with a zero-dollar balance, despite reporting Plaintiff's

bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 7," and/or with zero-dollar balances.

65. The Account was essentially frozen in time by Defendant based on a pre-bankruptcy balance and status on Defendant's January 2021 consumer report. Consequently, Defendant inaccurately reported the actual balance, status, and payment obligations on the Account.

66. Experian also inaccurately reported Plaintiff's Zions First National Bank Account (the "Zion Account"), starting with 53353 and opened in September 2005, which predated Plaintiff's bankruptcy filing.

67. The Account was discharged in Plaintiff's bankruptcy on or about June 22, 2020. Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

68. However, Experian inaccurately reported the discharged Account with a fixed balance of $205.00 instead of a zero-dollar balance.

69. Defendant had ceased reporting or updating the Account with any new information after the filing of Plaintiff's Chapter 7 bankruptcy.

70. Unlike Plaintiff's Alpine Account, Experian has yet to update the Zion Account.

71. Experian left the Zion Account frozen in time and let the Zion Account go "stale". Experian inaccurately reported an inaccurate balance, status, and payment obligation on the Zion Account.

72. Defendant does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Defendant reports a discharge.

73. Defendant does not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances, where Defendant is aware that the furnisher has ceased all account updates after the bankruptcy was filed.

74. Notably, two of the other national consumer reporting agencies, Equifax and Trans Union, did not inaccurately report the Accounts such as Experian did.

75. Alpine Credit Union and Zion First National Bank both furnished information to Defendant that indicated Plaintiff's Account was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

76. Alternatively, Defendant knew from past experiences that both Alpine Credit Union and Zion First National Bank furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

77. Nevertheless, Defendant blindly relied on the information provided by Alpine Credit Union and Zion First National Bank even though it conflicted with the information contained in Defendant's records, contradicted other information Defendant reported about Plaintiff, or neglected Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

78. If Alpine Credit Union and Zion First National Bank did not furnish data to Defendant that the Account was discharged, Defendant's blind reliance on the furnishers, Alpine Credit Union and Zion First National Bank was unreasonable.

79. Defendant was unreasonable in failing to consider the fact that since Alpine Credit Union and Zion First National Bank ceased updating the Account after Plaintiff's bankruptcy was

filed, Alpine Credit Union and Zion First National Bank were an unreliable furnisher in this instance.

80. Defendant inaccurately reported that Plaintiff owed balances that Plaintiff did not actually owe, and also reported inaccurate account statuses and payment histories.

81. Defendant inaccurately reported the Accounts with balances owed after the Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

82. Defendant failed to indicate that the Accounts had a zero-dollar balance and/or was discharged in Chapter 7 Bankruptcy.

83. Defendant's reporting of the Accounts is patently false and therefore inaccurate.

84. If not patently false, Defendant's reporting of the Accounts is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

85. Upon information and belief, had Defendant inaccurately reported the Account with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

86. After Plaintiff's bankruptcy discharge, Plaintiff applied for multiple lines of credit and car financing options, all of which have been denied.

87. Defendant's inaccurate reporting of the accounts, along with additional information belonging to Plaintiff, was published to at least twenty different furnishers, by Defendant during the process of Plaintiff's credit applications.

88. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

89. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational

harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V.    COUNT I
## Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

90. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

91. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

92. Defendant negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiff's pre-bankruptcy debts after Plaintiff received a Discharge Order.

93. Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily included it in Plaintiff's consumer reports.

94. When Defendant voluntarily procured and reported Plaintiff's bankruptcy information, it had an obligation to follow reasonable procedures to ensure it reported the bankruptcy discharge and its effect(s) with maximal accuracy.

95. Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

96. Individual furnishers of account information also notified Defendant of Plaintiff's bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report that are labeled included and discharged in bankruptcy.

97. Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing, and date of discharge.

98. But despite knowledge of Plaintiff's bankruptcy, Defendant inaccurately reported the Accounts, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy" and a balance greater than zero.

99. Defendant knew or should have known of its obligations under the FCRA, especially those pertaining to reporting discharged debt with a zero-dollar balance.

100. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged debts.

101. Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer file for Chapter 7 Bankruptcy.

102. Despite knowledge of these legal obligations, Defendant willfully and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendant deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

103. Not only did Defendant have prior notice of its unreasonable procedures for reporting discharged debts, but it also possessed information from which it should have known the information reported about Plaintiff was inaccurate.

104. Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

105. Defendant knows that discharged pre-petition debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

106. Yet in this case, Defendant reported the Accounts, which predated Plaintiff's bankruptcy, with a balance owed (instead of a zero-dollar balance) after it was discharged.

107. Defendant intentionally ignored the fact that Alpine Credit Union and Zion First National Bank ceased updating the Accounts after Plaintiff's bankruptcy.

108. Defendant knows that the Account has not been updated since Plaintiff's Chapter 7, and that the reported balance, payment obligation, and status are therefore inaccurate, outdated, and have been superseded by Plaintiff's Chapter 7 discharge. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report.

109. Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant , reported to Defendant , and reasonably available to Defendant .

110. Defendant has intentionally chosen to disregard knowingly inaccurate open balances and payment obligations in its reporting for pre-bankruptcy accounts in Defendant's automated "bankruptcy scrubs" it has been employing for over a decade.

111. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

112. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

113. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

114. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the Account was discharged in bankruptcy.

115. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

116. Defendant is a direct and proximate cause of Plaintiff's damages.

117. Defendant is a substantial factor in Plaintiff's damages.

118. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a) Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and or declaratory relief.

## VII.   JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 1st day of December 2021,

>Ryan Farnsworth ID # 8885
>Avery Law
>770 S. Woodruff Ave
>Idaho Falls, ID 83401
>Tel: 208-524-3020
>Fax: 208-524-2051
>Email: ryan@averylaw.net
>
>*Attorneys for Plaintiff*
>*Shara Lynn Bailey*